U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED - SHREVEPORT

JAN 0 9 2009

ROBERT H. SHEMWELL, CLERK
BY _____ DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

RONALD T. ALSUP, M.D.                    CIVIL ACTION NO: 06-0558

VERSUS                                    JUDGE DONALD E. WALTER

UNUM PROVIDENT CORPORATION,               MAGISTRATE JUDGE HORNSBY
REDSTONE SECURITY AGENCY
INC., ET AL.

## MEMORANDUM RULING

The singular issue before the Court is whether jurisdiction exists pursuant to 29 U.S.C. §1001 et seq., the Employment Retirement Income Security Act (ERISA). For the reasons stated herein, this Court finds that the policy in question is part of an ERISA plan.

### I. PROCEDURAL BACKGROUND

Plaintiff, Ronald T. Alsup, M.D., originally filed his cause of action in the First Judicial District Court, Caddo Parish, Louisiana, alleging that Defendants arbitrarily, capriciously, and without just or probable cause, refused to pay disability benefits under the terms his disability policy. [ Doc. #1]. Plaintiff sought relief solely under Louisiana law. Id. Defendant, Unum Provident Corporation ("Provident"), removed the case to federal court, asserting that the Court has original jurisdiction pursuant to 28 U.S.C. §1331 because the disability policy is governed by ERISA. [Doc. #8]. Defendant, Redstone Security Agency, Inc. ("Redstone"), consented to the removal of the case to federal court. [Doc. #10]. The removal order was issued April 3, 2006. [Doc. #13].

Plaintiff filed a motion to remand the case, arguing that the Court does not have jurisdiction because the disability policy in question was purchased and paid for by the Plaintiff in his individual

1

capacity, not as part of an employee benefit plan. [Doc. #17]. Defendants filed an opposition to Plaintiff's motion. [Doc. #20]. Magistrate Judge Hornsby provided the parties with the opportunity to submit supplemental memoranda and additional evidence as to whether the policy is part of an employee welfare benefit plan subject to ERISA. [Doc. # 23].

The parties complied with Magistrate Judge Hornsby's order and submitted supplemental memoranda on the issue of jurisdiction. [Docs. # 26, 27, 28, and 31]. Magistrate Hornsby found that genuine issues of material fact remained that could not be resolved on the paper record, noting that the factual and legal issues presented would required a bench trial to determine whether the policy is governed by ERISA. [Doc. #32]. Plaintiff's Motion to Remand [Doc. #17] was denied without prejudice. [Doc. #32].

This matter was set for a non-jury trial on June 25, 2007. [Doc. #38]. A pre-trial conference was held May 25, 2007. [Doc. #52]. The parties agreed to submit briefs on the issue of jurisdiction supported by stipulated facts, depositions, and/or affidavits in lieu of a bench trial. Id.

## II. FACTUAL BACKGROUND

Plaintiff, an internal medicine physician, applied for disability benefits with Provident on May 12, 1986. [Doc. #50, stipulated facts]. Provident approved the application and issued policy number 715956, which is the subject of this litigation.[1] Plaintiff contends that the policy was purchased and paid for individually. [Doc. #55, Affidavit of Ronald Alsup]. Defendants counter that the policy was purchased by Plaintiff through his employer as part of an ERISA plan.

---

[1] Provident policy number 715956 was issued to replace Plaintiff's previous policy number 616859 dated August 1, 1984. [Doc. #58, Ex. D-1 pg. 3]. Policy number 616859 was issued as part of Risk Group 6425. [Doc. #58, Ex. D-13].

The medical clinic where Plaintiff is employed originally began its relationship with Provident in 1973. [Doc. #58, Affidavit of Robert E. Redstone ("Redstone")]. An agent of Redstone Security Agency, Inc., contracted with Drs. Bickham and Combs, A Professional Medical Corporation ("APMC"), to provide disability policies for physicians and non-physician employees under Risk Group number 6425. Id. A Risk Group is established to provide group benefits to members through an employer, which results in both the ability to provide additional insurance benefits and a reduction in premiums for the members of the group. Id. Risk Group number 6425 allowed its members to receive benefits with a 12% discount on premium payments. [Doc. #58, Affidavit of Redstone, Affidavit of Frances Jenkins ("Jenkins"), and Affidavit of Sidney E. Kent ("Kent")].

The principals of Drs. Bickham and Combs, APMC, signed a Salary Allotment Agreement with Provident on June 1, 1973, at the time the risk group was established. Id. A Salary Allotment Agreement is signed to confirm that the employer will pay the premiums for its employees. Id. The Salary Allotment Agreement provides the necessary information to Provident as to who should receive the billing statements and authorizes the return of any refunds to the employer. Id. Based on the creation of Risk Group 6425 and the execution of the Salary Allotment Agreement, Provident billed the employer (Drs. Bickham and Combs) by "group list" for both physician and non-physician employees. Id.

Since 1973 Provident has provided benefits under Risk Group 6425 for physician and non-physician employees for the clinic, which operated at different times under the following names: (1) Drs. Bickham and Combs; (2) Drs. Bickham, Combs & Alsup; (3) Drs. Bickham and Alsup; (4) Drs. Bickham, Alsup and Nicholls; and (5) Tri State Medical Clinic. [Doc. #58, Affidavit of Redstone].

Although the name of the medical clinic changed numerous times, employees continued to receive benefits under Risk Group 6425. [Doc. #58, Affidavit of Redstone, Affidavit of Jenkins].

Plaintiff submitted his May 12, 1986, application for disability income benefits to Provident through his employer under Risk Group 6425. [Doc. #58, Affidavit of Redstone, Affidavit of Kent]. A review of the evidence shows that the policy in question was issued as part of Risk Group 6425. [Doc. #58, Exs. D-9, D-10, D-13]. In his application, Plaintiff lists his employer as Drs. Bickham, Combs, and Alsup, APMC. [Doc. # 55, Ex. 1-r]. Plaintiff also marked a box on the application indicating that his employer would pay for all disability coverage to be carried by him with no portion of the premium to be included in his taxable income. [Doc. #50, stipulated facts; Doc. #58, Ex. D-1]. Further, page two of the application quotes a quarterly "salary allotment premium" of $1199.07, which indicates that the premium stated was provided as part of the employer's contract with Provident. [Doc. #58, Ex. D-2]. Provident issued a disability policy with an effective date of August 1, 1986, under policy number 715956. The policy includes a section entitled "Salary Allotment Premium Payment" which states: "In consideration of the Salary Allotment Agreement between your employer and us, we agree to accept Policy Premiums as billed to your employer." [Doc. #58, Ex. D-1 at 14].

The parties present conflicting evidence as to whether Plaintiff's employer actually paid the premiums for the disability policy. Plaintiff maintains that he has paid for policy number 715956 individually from his personal account dating back to the original purchase of the policy. [Doc. #55, Affidavit of Ronald T. Alsup. Plaintiff also provides the Court with copies of checks drawn on his personal bank account payable to Provident Life and Accident Insurance Company. [Doc. #55, Ex. 2]. However, the earliest check provided by Plaintiff is dated August 28, 1997. Id.

4

Plaintiff also offers the affidavit of Debbie S. Thomas, the Practice Manager for Tri-State Medical Clinic, APMC. [Doc. #55, Affidavit of Debbie S. Thomas] Ms. Thomas states: "TriState Medical Clinic, APMC, has never paid premiums on Unum Provident-issued policies numbered 06-337-715956 and 06-334-616859 regarding Ronald T. Alsup, M.D." Id. The Court notes that Plaintiff has only been associated with Tri-State Medical Clinic since 1997 when Tri-State merged with Drs. Bickham, Alsup and Nichols, APMC. [Doc. #58, Affidavit of Frances Jenkins]. Thus, it appears that the affidavit submitted by Ms. Thomas does not address whether Plaintiff's previous employers paid the premium prior to 1997.

Additionally, Plaintiff provided the Court with a letter from William J. Cole, CPA, dated July 7, 2006. [Doc. #55, Ex. 5]. In the letter, Mr. Cole states that he reviewed the records of Tri-State Medical Clinic and found that Plaintiff's individual disability premium (Policy No. 715956) has not been disbursed by the Clinic. [Doc. #55, Ex. 5]. Once again, this Court notes that the letter does not reference a time frame of the years reviewed or whether the review includes financial records prior to the merger of Drs. Bickham, Alsup and Nichols, APMC with Tri-State Medical Clinic in 1997.

Defendants present affidavit testimony from Ms. Frances Jenkins, a 30 year employee of Provident. [Doc. #58, Affidavit of Jenkins]. Ms. Jenkins states that Provident's internal records confirm receipt of employer payments for Risk Group 6425 from the 1970s through a portion of 1997. Id. Defendants also present an affidavit by Mr. Robert E. Redstone, an insurance agent employed by Redstone Security Agency, Inc., through which Drs. Bickham and Combs originally contracted with Provident to provide disability policies. [Doc. #58, Affidavit of Redstone]. Mr. Redstone provided a copy of a memorandum dated August 26, 1986, from Provident to himself,

which enclosed a refund check made payable to Drs. Bickham & Combs, APMC, as confirmation of group billing under Risk Group 6425 and the corresponding Salary Allotment Agreement. [Doc. #58, Affidavit of Robert Redston; Ex. D-13].

Defendants also rely on the joint stipulated testimony of William J. Cole, CPA, as evidence that Plaintiff's employer paid the premium for policy number 715956 from 1984 though 1997. Mr. Cole testifies that he reviewed the financial records of the medical clinic under its numerous corporate names from the period of July 1, 1984 though June 30, 1997, with the exception of the years ending June 30, 1989, 1990, 1996 and 1997. [Doc. #57]. Mr. Cole states: "The available records indicate that the Corporations paid the premiums for the officers' individual and group disability policies, including Dr. Alsup's Provident Life and Accident policy at issue, Policy 715956." Id.

The Court notes that Mr. Cole also reviewed the financial records detailing charges to Dr. Alsup's account receivable at Tri-State Medical Clinic from June 1997 through December 2006. Id. Mr. Cole states that beginning in 1997 the charges in the account represent disbursements by Tri-State Medical Clinic to present. Id. From this time forward, Dr. Alsup repaid the clinic for his insurance premiums with after-tax payroll deductions, including the group long-term disability premiums, as well as the premiums for Provident Life Policy 715956. Id.

In 1997 Drs. Bickham, Alsup and Nicholls, APMC, merged into Tri-State Medical Clinic. [Doc. #58, Affidavit of Jenkins]. Plaintiff became an employee of Tri-State Medical Clinic, but he continued to receive benefits under policy number 715956. Id. It appears that as a result of the merger Plaintiff became the only remaining member of Risk Group 6425, however, he continued to receive benefits under the negotiated group billing discount of 12% on premiums. Id.

Based on the foregoing, the Court finds that sufficient evidence exists to establish that Plaintiff's employer paid the premiums for policy number 715956 for years 1984, 1985, 1986, 1987, 1988, 1991, 1992, 1993, 1994, and 1995. [Doc. #57].

## III. LAW AND ANALYSIS

### A. Whether the plan is subject to ERISA.

ERISA was enacted by Congress "to protect working men and women from abuses in the administration and investment of private retirement plans and employee welfare plans." Hansen v. Continental Insurance Co., 950 F.2d 971, 975-976 (5th Cir. 1991)(citing Donovan v. Dillingham, 688 F.2d 1367 (11th Cir. 1982)). ERISA applies to any "employee benefit plan" if that plan is established or maintained by any employer or employee organization engaged in interstate commerce, or in any industry or activity affecting interstate commerce. Hansen, 950 F.2d at 976 (citing 29 U.S.C. §1003(a); Memorial Hospital v. Northbrook Life Ins. Co., 904 F.2d 236, 250 (5th Cir. 1990); Donovan, 688 F.2d at 1370).

An "employee welfare benefit plan" is statutorily defined by ERISA as follows:

> Any plan, fund or program [] established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established for the prupose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, [] medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment [].

29 U.S.C. §1002(1). Whether a particular insurance arrangement constitutes an "employee benefit welfare plan" is a question of fact. Hansen, 940 F.2d at 976. However, the question is treated as one of law if the factual circumstances are undisputed or established as a matter of law. House v. American United Life Ins. Co, 499 F.3d 443, 448 (5th Cir. 2007).

7

To determine whether a benefit plan is regulated by ERISA, the Court must resolve whether the plan (1) exists, (2) falls within the safe-harbor provision established by the Department of Labor, and (3) satisfies the primary elements of an ERISA employee benefit plan – establishment or maintenance by an employer intending to benefit employees. House, 499 F.3d at 448 (citing Meredith v. Time Ins. Co., 980 F.2d 352, 355 (5th Cir. 1993)).

First, the Court finds that a plan was established by the employer. An ERISA plan is established "if from the surrounding circumstances a reasonable person can ascertain the intended benefits, a class of beneficiaries, the source of financing, and procedures for receiving benefits." Memorial, 904 F.2d at 251 (citing Donovan 688 F.2d at 1373). ERISA encompasses plans created through the purchase of insurance. Memorial, 904 F.2d at 241 (citing 29 U.S.C. §1002(1)). ERISA does not require a formal document to establish a plan, otherwise employers could preclude federal regulation by simply choosing not to memorialize their plan in an official document. Id.

Drs. Bickham and Combs, APMC, contracted with Provident as early as 1973 to provide disability income policies to both physician and non-physician employees under Risk Group 6425. [Doc. #58, Affidavits of Jenkins, Redstone, and Kent]. There is also evidence in the record showing employer billing, employer payment of premiums, and a group discount for policies under Risk Group 6425. [Doc. #58, Exs. D-5, D-8, D-13, Affidavits of Jenkins, Redstone, and Kent]. The procedure for receiving benefits are clearly defined in the policies provided and could be deciphered by a reasonable person. [Doc. #58, Ex. D-1]. Further, Drs. Bickham and Combs, APMC signed a Salary Allotment Agreement with Provident, which is evidence of the clinic's decision to provide benefits by agreeing to pay the premiums for the policies. [Doc. #58, Exs. D-4, D-5]. See Jaffe v. Provident Life and Accident Insurance Co., 2000 WL 349750 (S.D. Fla. 2000); Reber v. Provident

Life, 93 F.Supp.2d 995 (S.D. Ind. 2000). Accordingly, the Court finds that a plan was established.

Next, the Court must determine whether the safe-harbor provisions promulgated by the U.S. Department of Labor are met. 29 C.F.R. §2510.3-1(j). ERISA authorizes the Secretary of Labor to promulgate regulations interpreting ERISA. See 29 U.S.C. §1135. The safe-harbor provision mandates that certain group insurance plans will not be considered an "employee welfare benefit plan" under ERISA if all of the following four factors are met:

(1) No contributions are made by an employer or employee organization;

(2) Participation in the program is completely voluntary for employees or members;

(3) The sole functions of the employer or the employee organization with respect to the program are, without endorsing the program, to permit the insurer to publicize the program to employees or members, to collect premiums through payroll deductions or dues checkoffs and to remit the premiums to the insurer; and

(4) The employer or employee organization receives no consideration in the form of cash or otherwise in connection with the program, other than reasonable compensation, excluding any profit, for administrative services actually rendered in connection with payroll deductions or dues checkoffs.

29 C.F.R. §2510.3-1(j).

The plan originally established by Drs. Bickham and Combs, APMC, does not meet all four factors to qualify for the Department of Labor safe harbor provision. There is evidence in the record that the employer paid the premiums for its members and employees. [Doc. #58, D-8; Doc. #57]. Mr. Cole, the CPA, testified via stipulation that after reviewing the financial records of the employer from July 1, 1984 through June 30, 1997, he found that the Corporation paid the premiums for the officers' individual and group disability policies during this time period. [Doc. #57]. Additionally, the signing of the Salary Allotment Agreement indicates that the employer would be responsible for

paying the premiums of its employers. Provident asserts that their records confirm group payments of premiums by the employer for Risk Group 6425 from 1973 through a portion of 1997. [Doc. #58, Affidavit of Jenkins]. As support, Provident points to a billing statement for Risk Group 6425 for physicians and non-physician employees. [Doc. #58, Ex. D-8]. Provident also provides a memo from Provident to Redstone Security Agency dated August 26, 1986, that references an attached check made payable to Drs. Bickham & Combs, APMC as a refund to Group 6425 for the cancellation of Dr. Alsup's previous policy, not to Dr. Alsup individually. [Doc. #58, Affidavit of Jenkins; #58, Ex. D-13].

Because there is evidence in the record indicating that the employer contributed to the plan, the Court need not address remaining elements of the safe harbor provision. The insurance plan at issue does not meet the safe-harbor provisions and is therefore not exempt from coverage under ERISA.

Lastly, the Court must determine whether the plan satisfies the primary elements of an ERISA employee benefit plan; that is, the establishment or maintenance of a plan by an employer with the intention to benefit employees. House, 499 F.3d at 448. An "employer" is defined by ERISA as "any person acting directly as an employer, or indirectly in the interest of an employer, in relation to an employee benefit plan." 29 U.S.C. §1002(5). The term "participant" is defined by ERISA as "any employee or former employee of an employer [] who is or may become eligible to receive a benefit of any type from an employee benefit plan." House, 499 F.3d at 450; 29 U.S.C. §1002(2)(B)(7). ERISA only covers employee welfare benefit plans that are "established or maintained for the benefit of employees." Provident Life & Accident Ins. Co. v. Sharpless, 364 F.3d 634, 638 (5th Cir. 2004)(citing 29 U.S.C. §1002(1)). In order for a plan to qualify as an employee

welfare benefit plan, the plan must cover at least one employee. Id. (citing Meredith, 980 F.2d at 358; 29 C.F.R. §2510.3-3(b)).

Drs. Bickham and Combs, APMC, contracted with Provident as early as 1973 to provide disability income policies to both physician and non-physician employees under Risk Group 6425. [Doc. #58, Affidavit of Jenkins, Redstone, and Kent]. Provident has provided a copy of a bill for Risk Group 6425 detailing the names of individuals of the Group, which clearly demonstrates that non-physician employees were covered under the plan. [Doc. #58, Affidavit of Jenkins; Ex. D-8]. Physicians (presumably owner-employees) are designated as such with the initials of "MD" on the bill as compared to non-physician employees. Id. Additionally, on May 1, 1979, the employer executed a Participation Agreement for Employers' Pregnancy Disability Policy under Risk Group 6425. [Doc. #58, Ex. D-6, Affidavit of Kent]. The pregnancy disability policy provided benefits to female employees, none of which were physicians or owners of the clinic. [Doc. #58, Affidavits of Jenkins, Redstone, and Kent]. Mr. Kent, who negotiated the policy, states in his affidavit that the physicians at Drs. Bickham, Combs, & Alsup, APMC expressed to him their intention to provide benefits for their non-physician employees as part of the employee benefit plan. [Doc. #58, Affidavit of Kent].

Because the benefit plan was established and maintained by the employer, Drs. Bickham and Combs, APMC, to provide disability benefits for themselves and their employees, the plan qualifies as an "employee welfare benefit plan" as that term is defined by 29 U.S.C. §1002(1).

### B. Whether Plaintiff's policy was converted from an ERISA policy into an individual policy.

Plaintiff argues that his disability policy is an individual policy outside the reach of ERISA

11

based on payment of the premium from his personal account. It is the finding of this Court that Plaintiff's employer paid the premium for policy number 715956 for years 1984, 1985, 1986, 1987, 1988, 1991, 1992, 1993, 1994, and 1995. [Doc. #57]. Plaintiff has presented copies of personal checks for payment of the premium for policy number 715956 beginning in 1997. [Doc. #55, Ex. 2]. The evidence suggests that Plaintiff became personally responsible for paying his disability policy premium beginning in 1997 with the merger of Drs. Bickham, Alsup, and Nichols, APMC with Tri-State Medical Clinic. Thus, the question becomes whether the change in payor status converted policy number 715956 from an ERISA-covered plan to a non-ERISA plan. The Court must consider the statutory language of 29 U.S.C. §1002(1) to determine whether the policy was "established or maintained" by an employer for the benefit of employees. As discussed supra, the employer in this matter established a plan with Provident for its employees as early as 1973. Because the plan as originally established was subject to ERISA, the policies issued under the plan remain subject to ERISA. See Stern v. Provident Life, 295 F.Supp.2d 1321, 1326 (M.D. Fla 2003).

There are instances where Courts have held that a policy once governed by ERISA may be converted to a non-ERISA policy if an employee exercises a contractual right to convert the policy to an individual plan. To convert an ERISA policy the participant must leave the plan and obtain a new, separate, individual policy based on conversion rights contained in the ERISA plan. Waks v. Empire Blue Cross/Blue Shield, 263 F.3d 872 (9th Cir. 2001). Plaintiff has submitted no evidence to suggest that he converted his policy, or obtained a new, separate policy. Plaintiff's policy number 715956 is the same policy originally issued by Provident pursuant to his employer's plan under Risk Group 6425 in 1986. In fact, Plaintiff continues to receive the 12% plan discount. [Doc. #58, Affidavit of Jenkins]. While it does appear that Plaintiff assumed payment of the premium in

1997, this action alone is insufficient to remove the policy from the reach of ERISA. See Massachusetts Casualty Ins. Co., v. Reynolds, 113 F.3d 1450 (6th Cir. 1997).

Accordingly, this Court finds that Plaintiff's disability policy, number 715956, continues to be covered by ERISA.

## IV. CONCLUSION

For the reasons stated herein, this Court finds the insurance policy in question is an ERISA plan pursuant to 29 U.S.C. §1001 et seq.

An order consistent with this Memorandum Ruling shall issue herewith.

THUS DATED AND SIGNED, this 9th day of January, 2009.

DONALD E. WALTER
UNITED STATES DISTRICT JUDGE